**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| COBB P & G, INC. | ) | Case No. 09-51162 |
|       Debtor. | ) | |

## OBJECTION TO CONFIRMATION OF PLAN

Comes now Integra Bank, N.A. ("Integra"), and objects to Confirmation of the Debtor's Chapter 12 Plan of Reorganization [Docket No. 43] (the "Plan") herein on the following grounds:

1. The Debtor has failed by such a large margin to attain projections and maintain herd size that it raises the specter of either gross mismanagement of operations or conversion and fraud.

2. The Debtor has violated both the express Order of this Court and the Bankruptcy Code.

3. The Debtor's Plan does not propose to pay to Integra the amount of its lien in at least the following particulars:

   a. The Plan does not properly value Integra's collateral;

   b. The Debtor's Plan of Reorganization as proposed does not satisfy the lien retention requirements of 11 U.S.C. § 1225(a)(5)(B)(i);

   c. The interest rate as proposed by Debtor for the Livestock related balance is not sufficient; and

   d. The Debtor's Plan fails the best interest tests of 11 U.S.C. § 1225(a)(4);

4. The Debtors have improperly reamortized and fixed the rate of Debtor's Real Estate Mortgage.

5. The Debtor requests the authority to make modifications to the Plan post Confirmation, apparently without the requirement of notice and hearing as mandated by 11 U.S.C. § 1229(b)(2).

6. The Debtor's Plan is not feasible.

7. The Debtor's Plan of Reorganization inequitably impairs a guaranty in favor of Integra Bank.

In support thereof, Integra would show unto the Court as follows:

### I. Background and Facts:

#### A. Integra's Collateral and Debt

1. Integra incorporates by reference all of the Allegations contained in its Motions for Relief from the Automatic Stay and Abandonment [Docket Nos. 14 and 15] filed on or about October 29, 2009 (collectively the "Relief Motion") as if fully rewritten herein.

2. Without limiting the foregoing, Integra has a valid and perfected security interest in all of the Debtor's Real Estate, inventory, chattel paper, accounts, general intangibles, livestock and farm products, including, without limitation, offspring, replacement, substitutions and increases in relation to the foregoing and the products and proceeds thereof.

3. As of the Petition date, the Debtor was indebted to Integra in the amount of Four Hundred Seventy-two Thousand Six Hundred One Dollars and Sixty-five Cents ($472,601.65).

#### B. Procedural History

4. On October 6, 2009, the Debtor filed a Voluntary Petition under Chapter 12 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its properties as debtor-in-possession.

5. The Debtor, on a post-petition basis, without the consent of Integra or the filing of a Motion seeking use of Cash Collateral, continued to use Integra's Cash Collateral.

6. As such, on or about October 29, 2010 Integra filed its Expedited Motion For Order Setting Conditions And Granting Debtor Authority To Use Cash Collateral

For Operating Expenses, And Replacement Liens [Docket Number 11] (the "Cash Collateral Motion").

7. Also, based upon the Debtor's financial projections and operational history, Integra believed that it would not be feasible for the Debtor to reorganize.

8. As such, Integra filed the Relief Motion.

9. On or about November 19, 2009 this Court held a hearing on Integra's Relief Motion and Cash Collateral Motion (the "November Hearing").

10. At or before the November Hearing, the Debtor tendered to Integra the Cash Flow Statement and projection marked and introduced as "CX7" at the hearing (the "Projection").

11. At the November Hearing, the Debtor affirmed the accuracy of the Projection.

12. Inasmuch as the Debtor's cash flow Projections projected almost Ninety Thousand Dollars ($90,000.00) of net positive cash flow to Integra on or before the end of January, 2010, it seemed that the Court was unwilling to grant Integra Relief from the Automatic Stay at the time of the November Hearing.

13. As a consequence, Integra did not contest the entry of the Second Interim Order Authorizing Use of Cash Collateral for Operating Expenses and Granting of Replacement Liens Order in relation to Interim Cash Collateral Use [Docket No. 39] (the "Cash Collateral Order"), which Order specifically incorporated Exhibit CX7 as Debtor's Budget and Cash Usage.

### C. Debtor's Cash Flow Shortage

14. To date, the Debtor has tendered to Integra, from time to time, weekly sales reports and has filed herein Monthly Operating Reports (such documents collectively the "Reports").

15. The Debtor's Projection represented that there would be One Hundred Eighty-five Thousand Three Hundred Dollars ($185,300.00) of gross revenue from

October to January and Eight-eight Thousand Four Hundred Fifty Dollars ($88,450.00) of net revenue. Instead, there have only been Ninety-one Thousand Two Hundred Forty Dollars ($91,240.00) of gross revenue and Ten Thousand Nine Hundred Six Dollars ($10,906.00) of net revenue.

16. Again, one of the primary reasons that the Debtor was allowed to continue to operate post-petition was its representation in the Projections that almost Ninety Thousand Dollars ($90,000.00) of cash would be generated as Cash Collateral for Integra's loan by the end of January. However, the Debtor has fallen more than Seventy-seven Thousand Dollars ($77,000.00) short of this projection.

### D. Missing Inventory and Proceeds

17. Although this shortfall is alarming, of even greater concern to Integra is the unaccounted depletion of the Debtor's herd and the fact that no proceeds in relation to such depletion have been paid to Integra.

18. On or about November 19, 2009, significantly after the Petition date herein, Integra commissioned an inventory inspection of the Debtor's operation (the "November Inventory").

19. The November Inventory determined that there were three thousand five hundred eighty-seven (3,587) total animals in the Debtor's herd at that time.

20. Additionally, at the time of the November Inventory, 12 sows were pregnant, which would result in an additional 84 animals that should have been born.

21. The Reports submitted by the Debtor show that a total of approximately five hundred fifty-five (554) animals have been sold from the time of the November Inventory through the end of January.

22. After deducting the animals that have been sold from the animals that were present at the time of the inventory, Three Thousand One Hundred Ten (3,110) animals should have been present at the Debtor's location on or about January

20, 2010.

23. On or about January 20, 2010, Integra caused the same inspector who performed the November Inventory to conduct a second inventory of Debtor's hog operations (the "January Inventory").

24. The January Inventory found, instead of Three Thousand One Hundred Ten (3,110) animals as expected, only found Two Thousand Three Hundred Seventy-four (2,374) animals.

25. As such, Seven Hundred Thirty-six (736) animals were missing (the "Missing Inventory").

26. At a market value of One Hundred Seventeen Dollars ($117.00) a head, these Seven Hundred Thirty-six (736) animals had a market value of Eighty-six Thousand One Hundred Twelve Dollars ($86,112.00).

27. Integra has not received any proceeds in relation to this Eighty-six Thousand One Hundred Twelve Dollars ($86,112.00) of missing inventory.

E. Violation of Court Order and the Bankruptcy Code

28. Pursuant to the Cash Collateral Order, the Debtor was authorized to make expenditures only as described in Exhibit CX7 (Cash Collateral Order at paragraph 17 f - h).

29. Attached hereto as Exhibit A is a document entitled Financial Projections/Reports Reconciliation (the "Financial Reconciliation").

30. The Financial Reconciliation shows the amounts budgeted on Exhibit CX7 by the Debtor for various line items as well as actual expenditures made by Debtor as described in the Reports.

31. As can be seen from the Financial Reconciliation, the Debtor has been more than One Thousand Dollars ($1,000.00) over budget for the following items: maintenance/repairs, rent/housing, vehicle, and significantly, freight/trucking (the

"Over Budget Items").

32. In addition to the Over Budget Items, the Reports indicate that the Debtor spent more than One Thousand Dollars ($1,000.00) on items not contained in CX7 (the "Non-Budgeted Items").

33. The Over Budget Items as well as the Non-Budgeted Items each constitute a violation of the Cash Collateral Order.

34. In addition to the Reports, however, Integra has, from time to time, monitored the activities of the Debtor in the Debtor-in-Possession account.

35. The Debtor has made, without limitation, the following payments:

   a. Capital One           $1,324.00
   b. Terry Hoffman         $3,536.00
   c. Trigg County Sheriff  $ 110.00 (the "Illegal Payments")

   Without indicating that other items may also be improper, it is clear that these specific items are improper.

### E. Plan Provisions Relating to Integra

38. The Debtor values its real estate that is the subject of Integra's Mortgage at Three Hundred Thousand Dollars ($300,000.00) (Plan, page 2, Section 4).

39. The Plan proposes to pay to Integra this Three Hundred Thousand Dollars ($300,000.00) value together with interest at the rate of four and one-quarter percent (4.25%) amortized over thirty (30) years (Id.).

40. The Debtor values its hog inventory at One Hundred Fifty-three Thousand Nine Hundred Fifty Dollars ($153,950.00) (Plan, page 3).

41. The Debtor proposes to pay to Integra its projected value of the herd pursuant to the following basis:

   38. Twenty-five Thousand Dollars ($25,000.00) thirty (30) days after the effective date of the Plan;

39. An additional Twenty-five Thousand Dollars ($25,000.00) sixty (60) days following the effective date of the Plan; and

40. The remaining One Hundred Three Thousand Nine Hundred Fifty Dollars ($103,950.00) paid with interest at the rate of five percent (5.0%) amortized over sixty (60) months.

## II. Argument:

A. The Debtor has failed by such a large margin to attain projections and maintain herd size that it raises the specter of either gross mismanagement of operations or conversion and fraud.

1. As is discussed above, not only has the Debtor fallen more than Seventy-seven Thousand Dollars ($77,000.00) short of its operating revenue projections, more than seven hundred (700) animals have disappeared without explanation from Debtor's herd.

2. This combined Cash Flow Shortage together with inventory disappearance would seem to indicated, at a bare minimum, that the Debtor has grossly mismanaged its farming operations. However, additional facts presented by the Debtor's Reports create the possibility of a more troubling picture.

3. For example, since the Debtor had gross sales of almost One Hundred Thousand Dollars ($100,000.00) less than predicted, it would be safe to assume that the amounts projected for trucking the Debtor's animals to market would be substantially lower than what was projected in its budget and allowed in CX7. Instead, the Debtor spent *more than double* the amount of projected trucking charges.

4. Moreover, as discussed above, the Debtor was Seventy-seven Thousand Five Hundred Forty-four Dollars ($77,544.00) short in its net cash flow versus its projection. Integra is also concerned that the Eighty-six Thousand One Hundred

Twelve Dollars ($86,112.00) of missing inventory is quite similar to the cash short flow.

5. To the extent that the Debtor has liquidated inventory out of trust, it has falsified Monthly Operating Reports in relation to sales and converted Integra's Collateral to its own purposes, each in violation to applicable law.

B. The Debtor has violated both the express Order of this Court and the Bankruptcy Code.

6. The Cash Collateral Order contained several provisions in favor of Integra including, without limitation, the following:

a. Debtor shall maintain the size of its herd of livestock at least at the level that it was on the Petition date.

b. All livestock shall be sold at an average weight of two hundred forty (240) to two hundred eighty (280) pounds.

c. Only a de minimis number of animals weighing less than two hundred forty (240) pounds may be sold, and animals weighing under two hundred forty (240) pounds may only be sold if in the reasonable opinion of the Debtor they will not reach their full market weight due to natural causes.

d. The Debtor may not sell or dispose of any livestock for less than current market price.

e. Unless otherwise authorized in writing by Bank in its sole discretion, Debtor shall at no time use any Cash Collateral to acquire any real property. In addition, Debtor shall not use any Cash Collateral except for its usual and customary business costs.

f. During the month of December, 2009, the Debtor may use Cash Collateral to pay only the expenses of the Debtor described as December expenses in the Budget. Expenditures for any one (1) line item may not exceed

the amounts for that line item, and the total expenditure may not exceed the total paid-out cash flow without the prior written consent of Bank.

g. During the month of January, 2010, the Debtor may use Cash Collateral to pay only the expenses of the Debtor described as January expenses in the Budget. Expenditures for any one (1) line item may not exceed the amounts for that line item, and the total expenditure may not exceed the total paid-out cash flow without the prior written consent of Bank.

h. During the month of November, 2009, the Debtor may use Cash Collateral to pay only the expenses of the Debtor described as November expenses in the Budget. Expenditures for any one (1) line item may not exceed the amounts for that line item, and the total expenditure may not exceed the total paid-out cash flow without the prior written consent of Bank; however, the Debtor may not use Cash Collateral for such expenses until it has exhausted available administrative borrowing from entities other than Bank, and at least Twenty Thousand Dollars ($20,000.00) of such expenses must be paid for by administrative lending provided by an entity other than Bank. Amounts already spent by Debtor during the month of November, 2009 shall reduce the availability of money that may further be spent in the month of November, 2009.

i. The Debtor has represented that the Cash Collateral generated by the Debtor will be substantially in excess of the amounts authorized for expenditure herein. Such additional sums may not be spent by the Debtor and must be maintained in the Debtor's Debtor-in-Possession account at Bank.

j. Debtor shall make no extraordinary sale of livestock.

k. Debtor shall deposit, maintain, and disburse the Cash Collateral and any other cash in accordance with the provisions of this Order.

7.  It is clear that the Debtor has violated many of these protection terms. For example, it is clear that the herd size has reduced drastically in violation of item a.

8.  It is also clear that the Debtor has violated items f and g of the Cash Collateral Order in relation to allowed budgeted expenditures.

9.  If the Debtor claims that it sold inventory for reduced proceeds in order to attempt to explain the missing inventory and lack of cash to Integra, the Debtor would have been violation of paragraphs b, c, d and j of the Cash Collateral Order.

10. Also, to the extent that the Debtor received any proceeds in relation to any missing animals, it did not deposit the same with Integra Bank in violation of paragraph k of the Cash Collateral Order.

11. In addition to the foregoing express violations of the Cash Collateral Order, the Debtor, in making the Illegal Payments, seems to have, in relation to Capital One, made a payment of pre-petition unsecured debt without authority from this Court, with respect to the transfer to Terry Hoffman, made a transfer to an insider, again, without authority from this Court, and, in the case of the payment to the Trigg County Sheriff, apparently paid taxes in relation to property that is not owned by the Debtor, again without authority of this Court. All of the foregoing are in contravention of the Bankruptcy Code.

        C. The Debtor's Plan does not propose to
    pay to Integra the amount of its lien in at least the following particulars

    a.   The Plan does not properly value Integra's collateral.

12. While Integra does not object to the valuation placed upon the Debtor's Real Estate, Integra does object to the valuation that the Debtor has assigned to its livestock collateral.

13. First, as is discussed above, the Debtor is missing over Eighty Thousand Dollars ($80,000.00) of inventory and has failed to pay Integra almost Eighty Thousand

Dollars ($80,000.00) of projected income. Given the foregoing, Integra's lien has been adversely effected by the Debtor in that same amount.

14. Second, Integra disputes the actual valuation assigned by the Debtor.

   b. The Debtor's Plan of Reorganization as proposed does not satisfy the lien retention requirements of 11 U.S.C. § 1225(a)(5)(B)(i).

15. It seems that the Debtor's proposed Plan of Reorganization herein must contemplate the use of the proceeds of the Bank's Collateral to repay other creditors and support its ongoing operations. There is a split among the Courts as to whether or not such a potential use is proper under the Bankruptcy Code.

16. For example, in In Re: Stallings in the United States Bankruptcy Court for the District of Idaho decided in 2003 that absent the secured creditor's consent, a Debtor may not use the proceeds of its farming operations to pay other creditors or fund operating expenses at all. In Re: Stallings 290 BR 777, 790 (Bankr. D. Idaho 2003). The Stallings decision has not been adopted or rejected by the United States Court of Appeals for the Sixth Circuit.

17. Other cases, however, indicate that such a use may be permissible. See, In Re: Howard 212 B.R. 864 (Bankr. D. Tenn. 2003).

18. However, even cases such as In Re. Howard put significant restrictions on the Debtor's ability to do so. For example, there must be significant safeguards in favor of the secured creditor before lien retention requirements of 1225(a)(5)(B)(i) are satisfied. Id. at 876.

19. Such restrictions must be sufficient to ensure that should the Debtor default on Plan payments, the creditor will receive the balance of its claim or the value of the collateral as of the effective date, which ever is less. Id.

20. Like In Re: Stallings, the analysis of the Bankruptcy Court in In Re. Howard has neither been confirmed nor rejected by the United States Court of Appeals for the Sixth Circuit.

21. It is clear, though, that to the extent that the value of the Debtor's livestock decreases post-confirmation, the lien retention requirements will not be satisfied, and the Plan may not be confirmed ("…the lien on the herd will not suffice to met Chapter 12's lien retention requirement if it fails to adequately protect the Creditor's secured claim over the course of the Plan repayment period." In Re: Hanna 912 F.2d 945, 951 8th Cir 9190).

   c. The interest rate as proposed by Debtor for the Livestock related balance is not sufficient.

22. The Debtor does not propose to pay to Integra the full value of its lien on the Debtor's livestock immediately. As such, the Court must find that the present value proposed payments is not less than the amount of Integra's secured claim.

23. The present value requirement of 11 U.S.C. § 1225(a)(5)(B)(ii) is identical to the present value requirement section of 11 U.S.C. § 1325(a)(5)(B)(ii).

24. As such, it would seem that case law interpreting the Chapter 13 present value requirement is applicable here.

25. As this Court is aware, the Supreme Court addressed this issue in Till v. SCS Credit Corp. 124 S.Ct. 1951 (2004).

26. In Till, the Supreme Court endorsed the Supreme Court plurality endorsed a "Prime Rate Plus" formulation to determine the applicable interest rate.

27. The Court should start with the Prime Rate and then adjust upward to reflect the enhanced level of risk associated with the bigger risk of non-payment that is present in the particular circumstances. Id.

28. As of the writing of this Objection, the Prime Rate is three and one-fourth percent (3.25%).

29. The Debtor has proposed only a five percent (5%) interest rate payment to Integra. This is less than two (2) points in excess of the Prime Rate.

30. Generally, in cases where a creditors lien is secured by livestock, "tremendous risks [is] posed to the secured creditor for the Debtor's continued operation." Collier on Bankruptcy ¶ 1225.03 [4] (15th Ed. Rev. 2005).

31. Moreover, given that the Debtor has failed to meet numerous sets of financial projections in this case, it would seem that the likelihood of default in this case is much higher than even the standard risk that might be expected.

32. As such, the rate of at least three percent (3%) over Prime should be applied to Integra's claim.

   d. The Debtor's Plan fails the Best Interest Test of 11 U.S.C. § 1225(a)(4).

33. The purpose of the best interest test is to ask basically whether the unsecured creditor is better off liquidating today as opposed to accepting the Plan payments from the debtor.

34. Pursuant to 11 U.S.C. § 1225(a)(4) "Each allowed unsecured claim" must do better under the Debtor's payment analysis than it would under liquidation. As such, this section is designed to protect each unsecured claim holder rather than the whole class of unsecured creditors generally.

35. Inasmuch as the Debtor has categorized Integra's partially unsecured, the Debtor must show that its continued operation is also in the best interest of Integra, and it cannot do so. Inasmuch as Integra can make arrangements to liquidate the herd and have a lower unsecured claim, the Debtor's proposal is not in the best interest of Integra.

   D. The Debtor's Have Improperly Reamortized and Fixed

the Rate of Debtor's Real Estate Mortgage.

36. Although 11 U.S.C. § 1222(b)(9) does allow Debtors to extend the payment period for secured claims past the length of the Plan, Courts do put constraints on the Debtors ability to do so.

37. For example, one relevant consideration in determining the appropriate length of the amortization is the length of the original loan. In Re: Hannah at 882.

38. In this case, Integra's Note matured twenty (20) years from its inception, or March 5, 2026. The Debtor would propose to extend this time an additional fourteen years.

39. Of great importance, however, was that this Note was a *Variable Rate* Note allowing the interest rate to vary over time. Thus, while Integra was willing to commit to a twenty (20) year amortization, it was not willing to assume the interest rate exposure of a twenty (20) year fixed rate loan.

40. According to Collier on Bankruptcy, "It would be inequitable for the Court to permit the Debtor to lock in a long-term fixed interest secured loan if the result of doing so is to provide the Debtor with a windfall." Collier on Bankruptcy ¶ 1225.03 [4][b].

41. According to www.wsjprimerate.us, the average of the U.S. Prime Rate from 1947 to the present day is 9.842% per annum. This is clearly significantly higher than today's Prime Rate of only 3.5%.

42. By allowing the Debtor to lock in any rate for an extended period based upon today's historically low Prime Rate would be indeed to provide the Debtor with a windfall.

43. Collier endorses both due-on-sale clauses as well as balloon payments in order to address this potential windfall. Id.

44. Another way to do so would be to allow the interest rate to fluctuate throughout the term of the Note.

### E. The Debtor requests the authority to make modifications to the Plan post Confirmation, apparently without the requirement of notice and hearing as mandated by 11 U.S.C. § 1229(b)(2).

45. This Objection is merely inserted as a point of clarification. Pursuant to 11 U.S.C. § 1229(b)(2), no modification of the Plan after Confirmation may be made except after notice to all creditors including, without limitation, Integra and a hearing.

46. The "notice and a hearing" requirement of 11 U.S.C. § 1229(b)(2) clearly is designed to allow creditors to object to the proposed modifications"

### F. The Debtor's Plan is not feasible.

47. As was discussed by Integra at the November Hearing in relation to this matter, the Debtor's financial protections are not feasible in light of the Debtor's historical operations.

48. Moreover, in this case, the Debtor has failed to meet several sets of proposed budget projections.

49. At a prior hearing in this matter, the Court indicated that there would be extra scrutiny paid to feasibility in this matter in light of the Debtor's financial projections.

50. This is in accordance with Collier's analysis. "In conducting the feasibility analysis required by § 1225(a)(6), the Court should scrutinize the Debtor's proposed Confirmation Plan with extra caution in light of the tremendous risks proposed to the secured creditor from the Debtor's continued operation." In cases where the Debtor is seeking to amortize claims secured by Livestock. Collier on Bankruptcy ¶ 1225.03 [4][c].

G. The Debtor's Plan of Reorganization

inequitably impairs a guaranty in favor of Integra Bank.

51. Integra is the holder from a Guaranty of a third party that terminates in March of 2011. Given the Debtor's repeated failures to obtain cash flow projections, it is very unlikely that the Debtor will be able to reorganize as proposed in its Plan of Reorganization.

52. Given the highly likelihood of failure, it would be inequitable to deprive Integra of the effect of its Guaranty because of delay by the Debtor.

**WHEREFORE,** Integra hereby prays that Confirmation of the Debtor's Plan of Reorganization be denied.

/s/ Andrew C. Ozete
Andrew C. Ozete
BAMBERGER, FOREMAN, OSWALD & HAHN, LLP
20 NW Fourth Street, Suite 708
Post Office Box 657
Evansville, IN 47704-0657
Telephone: 812/425-1591
aozete@bamberger.com
ATTORNEYS FOR CREDITOR, INTEGRA BANK, N.A.

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Objection to Confirmation of Plan was mailed or sent via ECF by the secured creditor upon the trustee, the United States Trustee, attorney for debtor(s), or debtor-in-possession, this 11th day of February, 2010.

**Notice will be electronically mailed to:**
Sandra D. Freeburger on behalf of Debtor Cobb P & G, Inc.
sfreeburger@dsf-atty.com, parnold@dsf-atty.com;smattingly@dsf-atty.com
Joseph J. Golden
ustpregion08.lo.ecf@usdoj.gov
Harry L. Mathison
hmathisontrustee@kdblaw.com, jmathisonjr@ecf.epiqsystems.com
Laura A. Scott on behalf of Creditor Integra Bank, N.A.
jwoehler@bamberger.com, cparker@bamberger.com;krayburn@bamberger.com
Michael F. Spalding on behalf of Creditor Farm Service Agency
Mike.Spalding@usdoj.gov, USAKYW.ecfbankruptcy@usdoj.gov;jennifer.bailey2@usdoj.gov

/s/ Andrew C. Ozete
Andrew C. Ozete

L:\LIB\DOCS\53926\PLEADING\S47507.DOC